UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BLACK HAWK BUILDERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DAVID EPSTEIN D/B/A<br>DME CONSTRUCTION AND<br>CINCINNATI INSURANCE,<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT & JURY DEMAND** |

The plaintiff, Black Hawk Builders, LLC ("Black Hawk" or "plaintiff"), by its attorneys, O'Connor and Associates, LLC, brings this complaint against defendants, DME Construction and Cincinnati Insurance.

**NATURE OF THE ACTION**

1. Black Hawk seeks declaratory and other contract-based relief in connection with two lawsuits that were filed in the Middlesex County Superior Court (Massachusetts) by two former DME Construction employees who sustained personal injuries on May 20, 2014, styled as *John Pasteris v. Black Hawk Builders, LLC*, Civil Action No. 1781CV01438 and *Tam Mitchell v. Black Hawk Builders, LLC*, Civil Action No. 1581CV06072.[1]

---

[1] The *Pasteris* matter is still pending. The *Mitchell* suit has been settled.

## JURISDICTION AND VENUE

2. The court has jurisdiction of this matter under the provisions of 28 U.S.C. sec. 1332 because the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000 and is between three parties located in different states.

3. The court has jurisdiction over this matter and is authorized to enter declaratory judgment pursuant to 28 U.S. Code § 2201.

4. The court had jurisdiction over this matter and is authorized to enter declaratory judgment pursuant to M.G.L.c. 231A § 2.

5. Personal jurisdiction is established pursuant to Fed.R.Civ.P. 4(k)(i) and M.G.L.c. 223A, section 3.

6. Venue in this District is proper under the provisions of 28 U.S.C.§§ 1391 (a) and (c), inasmuch as plaintiff resides and does business in this District.

7. Additionally, Massachusetts is the appropriate venue for this matter because the contract entered into between Black Hawk and David Epstein ("Epstein") d/b/a DME Construction ("DME") was for a construction project located in Massachusetts, and the plaintiffs' personal injuries occurred in the Commonwealth.

**THE PARTIES**

8. Plaintiff Black Hawk is a Massachusetts corporation which maintains an office and principal place of business at 94 Main Street North Reading, MA 01864. Black Hawk is in the business of construction.

9. Defendant Epstein is an individual who as of 2014, operated an unincorporated framing business, DME Construction. Epstein resides at and operates his business out of 9 Clough Road, Bow, NH 03304. He is a resident of New Hampshire.

10. Defendant The Cincinnati Insurance Company ("Cincinnati") is a corporation in the business of insurance, that maintains its corporate headquarters at 6200 S. Gilmore Road, Fairfield, Ohio.

**FACTS**

11. On or about December 7, 2012, DME submitted a proposal to be a framing subcontractor to Black Hawk, which was the general contractor on the construction of a home located at 6 Black Horse Lane in Andover, Massachusetts (Exhibit "A").

12. While some preliminary services were performed by DME in late 2012 and early 2013 to cap the building foundation, DME did not begin its framing work in earnest until the spring of 2013.

3

13. On or about June 15, 2013, Black Hawk and Epstein entered into a subcontract for the framing work. Included in the contact as an exhibit was a Subcontract Indemnity Agreement. This document was also signed by Epstein and Black Hawk on June 15, 2013. While the Subcontract Indemnity Agreement was executed on June 15, 2013 and DME did not start work until around that time, the Subcontract Indemnity Agreement mistakenly inserted an applicable time period of June 14, *2012* until June 13, 2013, the 12 months before the date of the agreement and its execution (Exhibit "B").

14. On or about May 20, 2014, less than one year after the indemnity agreement was executed, Tam Mitchell ("Mitchell) and John Pasteris ("Pasteris") were employees of DME working at 6 Black Horse Lane. While working at 6 Black Horse Lane on that date, Mitchell and Pasteris fell through scaffolding that had been built by Mitchell. Both sustained personal injuries and sued Black Hawk.

**CONTRACT TERMS**

15. The Subcontractor Indemnity Agreement required DME to "at its sole expense maintain the following minimum insurance on its own behalf…". DME was to procure insurance that provided:

4

>   Commercial General Liability Insurance with a combined Bodily Injury and Property Damage limit of not less then **ONE Million ($1,000,000) dollars per occurrence and TWO Million ($2,000,000)** in the aggregate. Including Pollution Liability (where applicable). Coverage must include the following:
>
>   1. Broad Form Blanket Commercial Liability for liability assumed under this Contract and all other Contracts relative to the project.
>
>   ….. .
>
>   7. Blanket additional insured endorsement (form CG-2010 edition 11/85 or its equivalent) can be furnished reflecting the inclusion of the interests of Contractor and Owner (if appl.) their officers, directors, partners, representatives, agents and employees and named as an Additional Insured on a primary & non-contributing basis including Completed Operations.

16. The Commercial General Liability policy DME procured and as issued by Cincinnati does not comply with the subcontract requirements.

17. The risk transfer obligations DME took on under the contract documents state:

>   To the fullest extent permitted by law, Subcontractor will indemnity and hold harmless "CONTRACTOR" and Owner (If applicable)……from and against any and all claims suits liabilities, liens, judgments damages losses and expenses, including reasonable legal fees and all court costs and liabilities (including statutory liability) arising in whole or in part and in any manner from injury and/or death of

5

       person or damage to or loss of any property resulting from the acts, omissions, willful or negligent misconduct, failure to comply with any aforesaid laws, regulations and codes, breach or default of Subcontractor, its officers, directors, agents, employees and subcontractors, directly in connection with the performance any work performed directly by the Subcontractor (or by a subcontractor of the Subcontractor) for Contractor and Owner (if applicable) pursuant to any Contract. Purchase Order and/or related Proceed Order or verbal work request, except to the extent that those claims….are caused by the sole negligence of Contractor. Subcontractor will defend and bear the costs of defending any actions, proceedings brought against the Contractor and Owner (if applicable), their officers, directors, agents, and employees, arising in whole or in part out of any such negligent act, omission, failure to comply any aforesaid law, regulations and codes, breach or default as a result of work performed directly by the Subcontractor.

18. Because Mitchell, an employee of DME, built temporary scaffolding that failed and ultimately led to the claims by both Pasteris and Mitchell, DME is required to defend and indemnify Black Hawk for all consequences of the incident.

**TENDERS AND DENIALS**

19. The acts, omissions or negligence of DME or its employees, Mitchell and Pasteris, caused the incident, claim, loss and damages asserted in both of their lawsuits against Black Hawk.

20. Black Hawk, through its insurance carrier, tendered to DME the defense and indemnification obligations arising from the aforementioned suit on June 13, 2014 and again on October 30, 2015. DME declined the tenders and, in so doing, has: (1) breached the Subcontract; (2) caused Black Hawk to incur defense costs unnecessarily; and (3) left Black Hawk exposed to financial consequences for DME alone is responsible to absorb.

21. Black Hawk's carrier sent a tender demand to DME's general liability insurer, Cincinnati, for the defense and indemnification of the Suit on January 4, 2018. That tender was rejected.

22. Black Hawk has defended both Pasteris and Mitchell's suits without the contractual and insurance protections DME promised to provide. Monies were paid to Mitchell on Black Hawk's behalf. Black Hawk anticipates trying or settling the Pasteris case without the contractual and insurance protections DME and its carrier were obliged to provide.

**COUNT I: DECLARATORY JUDGMENT AS TO DME**

23. Black Hawk repeats and incorporates herein by reference the foregoing allegations.

24. Under the Subcontract, DME is required to defend and indemnify Black Hawk from claims "arising out of… he acts or omissions" of DME or its employees.

7

25. Pasteris and Mitchell were performing work at the site on behalf of and at the direction of DME.  Mitchell was the employee primarily responsible for constructing the subject scaffolding. Pasteris was the DME employee responsible for overseeing Mitchell's work.  Neither Mitchell or Pasteris exercised due care.

26. The incident injuring Mitchell and Pasteris arose out of DME's work on the site and was caused by their acts, omissions or negligence, placing the claim squarely within the scope of the Subcontract's defense and indemnity obligations.

27. Black Hawk is entitled to defense and indemnification by DME for the Suit.  DME has improperly refused to defend the Suit and has declined the opportunity to indemnify in accord with the Subcontract.  DME has consequently caused Black Hawk monetary and other forms of damage.

28. Black Hawk asks this Court to declare that, under the Subcontract, DME must defend and indemnify Black Hawk for any and all costs, expenses, settlement or judgment in connection with the suits by Pasteris and Mitchell's.

### COUNT II: BREACH OF CONTRACT-DME'S DUTY TO DEFEND

29. Black Hawk repeats and incorporates herein by reference the foregoing allegations.

30. Pursuant to the subcontract, DME is required to defend Black Hawk for claims "arising out of or resulting from" DME's work caused by the negligence of DME or one of its employees.

31. The underlying claims arise out of DME's work for and on behalf of Black Hawk. The accident was caused by the acts, omissions or negligence of DME or that of the plaintiffs Mitchell and Pasteris.

32. DME's refusal to defend Black Hawk constitutes a breach of its obligations under the subcontract, and said breach has caused monetary and other forms of damage.

**COUNT III: BREACH OF CONTRACT-DME'S DUTY TO INDEMNIFY**

33. Black Hawk repeats and incorporates herein by reference the foregoing allegations.

34. DME is required to indemnify Black Hawk for claims "arising out of" DME's work.

35. Both claims arise out of injuries DME employees sustained while working for and on behalf of DME, which was caused by their own conduct or negligence and/or the conduct or negligence of DME.

36. Should Black Hawk be held liable to Pasteris for his injuries as claimed in the Suit, Black Hawk is entitled to indemnification from DME for any damages that me be found to be owing from Black Hawk to Pasteris.

37. Black Hawk should be fully indemnified for the defense costs and the settlement amount paid to Mitchell. DME's failure to agree to indemnify Black Hawk constitutes a breach of contract that has caused monetary and other forms of damage.

**COUNT IV: BREACH OF CONTRACT BY DME-NON-COMPLIANT INSURANCE**

38. Black Hawk repeats and incorporates herein by reference the foregoing allegations.

39. DME was required to purchase and maintain specifically described liability insurance coverage, which further required that DME to name Black Hawk an "additional insured" on its liability policy according to specific, commercially-available endorsements.

40. The "additional insured" endorsement that DME procured is not of the type or the equivalent to what is specifically required by the subcontract, which among other things specified the so-called 11-85 form that does not impose a causation requirement.

41. Had DME procured the applicable ISO 11-85 form there would be no question that Blackhawk would have to be classified as an additional insured given the broad "arising out of" language in the endorsement. If the 11-85 was procured, it would have made Black Hawk an additional insured "with respect to liability arising out of [DME's] operations".

42. DME failed to purchase and maintain the required insurance coverage or the specified "additional insured" endorsements, placing DME in breach of its obligations under the subcontract and causing monetary and other forms of damage.

**COUNT IV: DECLARATORY JUDGEMENT AS TO CINCINNATI**

43. Black Hawk repeats and incorporates herein by reference the foregoing allegations.

44. The policy issued by Cincinnati to DME provides:

    **9. Automatic Additional Insured-Specified Relationships**

    a. The following is hereby added to SECTION II-WHO IS AN INSURED:

       (1) Any person or organization described in Paragraph 9.a.(2) below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Party by reason of:

           (a) A written contract or agreement; or

           (b) An oral agreement or contract where a certificate of insurance shows that person or organization as an additional insured has been issued,

           Is an insured, provided:

           (a) The written or oral contract or agreement is:

11

      1) Currently in effect or becomes effective during the policy period; and

      2) Executed prior to an "occurrence" or offence to which this insurance would apply;....

  (2) Only the following person or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insurers is limited as provided herein:

    ....

    Any person or organization with which you have agreed per Paragraph 9.a.(1) above to provide insurance but only with respect to liability arising out of "your work" performed for that additional insured by you or on your behalf. A person or organization's status as an insured under this provision of this endorsement continues only for the period of time required by the written contract or agreement, but in no event beyond the expiration date of this Coverage Part. If there is no written contract or agreement, or if no period of time is required by the written contract or agreement, a person or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

45. DME was to provide framing services for Black Hawk for approximately one year after the aforementioned subcontract was executed. The incident here took

place on May 20, 2014, eleven months after the contract was entered. The policy issued by Cincinnati should afford Black Hawk defense and all other coverage benefits available under the policy term.

46. Cincinnati's refusal to provide a defense and indemnity Black Hawk, has unnecessarily exposed Black Hawk to counsel fees, defense costs, liability, and statutory prejudgment interest, all which should be borne by Cincinnati.

## **PRAYERS FOR RELIEF**

The plaintiff, Black Hawk Construction, LLC, hereby requests that the Court find, declare and order:

1. That Black Hawk is an additional insured under DME's policy that was provided pursuant to its contractual obligations to Black Hawk;

2. That the Subcontract imposes valid and enforceable obligations on the defendant, David Epstein d/b/a DME Construction;

3. That the Subcontract requires DME to defend Black Hawk in the suits filed by its former employees, Tam Mitchell and John Pasteris and that the defendant has breached that duty;

13

4. That the Subcontract requires DME to indemnify Black Hawk for the monetary consequences of the Suits filed by Mitchel and Pasteris and that the defendant has breached that duty;

5. That the Subcontract required DME to procure specific insurance protection for Black Hawk and the DME breached that duty in a manner causing damage;

6. That DME has breached its contractual obligations to Black Hawk, which has caused monetary and other forms of damage;

7. That DME and Cincinnati be ordered to defend and indemnify Black Hawk for all sums expended in its defense of both suits;

8. That the DME and Cincinnati be ordered to indemnify Black Hawk for any settlement made or judgment that enters against it;

9. That Cincinnati is obligated to provide a legal defense and insurance coverage to Black Hawk on a primary, non-contributory basis;

10. That DME pay such sums to which Black Hawk would have been entitled had the defendant secured the specific insurance protection required by the Subcontract, including without limitation:

    a.    The monetary limits of said policy (to the extent necessary for settlement or to satisfy a judgment);

    b.    The costs associated with the "supplementary pay" features of standard Insurance Services Office Commercial General Liability form policies.

    c.    Counsel, expert witness, stenographic and constable charges;

    d.    litigation costs;

    e.    pre-judgment interest; and

    f.    statutory interest from the date of the defendant's breach.

11. Such other compensatory and other forms of damages as may be established at trial; and

12. Such further relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

                                          BLACK HAWK BUILDERS, LLC,
                                        By its attorneys,

                                        */s/ Peter H. Hamilton*
                                        _____
                                        David M. O'Connor
                                        BBO# 544166
                                        Peter J. Hamilton
                                        BBO# 673070
                                        O'CONNOR & ASSOCIATES, LLC
                                        325 Boston Post Road
                                        Sudbury, MA 01776
                                        (978) 443-3510
                                        doconnor@oconnorllc.com
                                        phamilton@oconnorllc.com

DATED: February 17, 2022

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed was e-filed via PACER on February 17, 2022.


                                        */s/ Peter H. Hamilton*
                                        _____
                                        Peter H. Hamilton